LAND, J.
Plaintiff sued the Lillie Oil Company, M. A. Currie, Miss L. B. Young, *661 and S. S. Hunter, to recover of them', in solido, the sum of $3,462.85, with legal interest from August 1, 1908. Plaintiff alleged that on March 13, 190S, it entered into a written contract with the Lillie Oil Company to drill a well for the price of $7,500, and that said contract was guaranteed by the said Currie, Hunter, and Miss Young; that plaintiff had fully complied with the terms of said contract on its part, and had also furnished the defendants with sundry materials for a pumping plant, well worth $2,-612.95, as shown by itemized statement annexed to the petition. Plaintiff admits credits to the amount of $6,650, leaving the balance claimed in the petition.
The Lillie Oil Company, after pleading the general issue, admitted the execution of the alleged written contract, and averred that the well had never been completed in accordance with the terms of the contract, but was abandoned long before it was completed, and that respondent had tried to complete the same at a large cost, but had been unable t'o do so. No answer was filed by the other defendants, but as to them issue was joined by default.
The case was tried, and there was judgment in favor of the plaintiff against the Lillie Oil Company for the full amount claimed, and against the three other defendants, jointly, for the sum of $1,000, with interest. After the judgment was rendered, the Lillie Oil Company was placed in the hands of a receiver, and he and his codefendants have appealed.
[1] Plaintiff has filed a plea to the jurisdiction of this court as to the judgment for $1,000 against three of the defendants. Plaintiff’s demand was for $3,462.85 against all of the defendants in solido. The jurisdiction of this court is tested by the amount demanded, and not by the amount of the 'judgment rendered.
[2] The original judgment for $1,000 was against the three defendants in solido. The judge a quo refused to grant defendants’ motion for a new trial, but amended the judgment so as to condemn the defendants jointly. Defendants contend that the judge was without power to amend the judgment without granting a new trial. Plaintiff has acquiesced in the amendment, and, as it is in favor of the defendants, they have no cause to complain.
Under the contract the plaintiff bound itself to drill a well to a depth of 2,300 feet, unless oil in paying quantities was found at a less depth.
The fifth clause of the contract provides:
“Upon the completion of the said well to the satisfaction of the party of the second part, the party of the second part is to pay the party of the first part the sum of seventy-five hundred dollars.”
On the back of the contract was indorsed the following:
“We guarantee the terms of this contract.
“M. A. Currie.
“L. B. Young.
“S. S. Hunter.”
All three were directors of the Lillie Oil Company. Currie was also vice president, and Miss L. B. Young was also secretary and treasurer. It appears that S. S. Hunter represented the company in its dealings with the plaintiff.
A well was drilled by the plaintiff on the land of the Lillie Oil Company to the depth of some 2,260 feet, when oil was struck. Representativos of the oil company were notified of the completion of the well, and were present when it “was to come in.” Mr. Savage, one of the directors, testified that he could not tell the condition of the well, but, “It threw out a spout of oil, but did not continue long, as they dropped the bailer in.”
TÍie bailer remained in the- well for three or four weeks, before it was removed. Then there was a small flow of oil, which was piped into the tanks of the oil company. Plaintiff’s representatives turned over the well, to the oil company. Later, at the in *663 stance of S. S. Hunter, plaintiff furnished a complete pumping plant, which was used by the oil company for the purpose of pumping oil from the well. This plant was retained by the oil company, and has never been surrendered or tendered to the plaintiff. It is admitted that the furnishing of this plant was outside of the drilling contract. There is no just reason why the oil company should not be condemned t'o pay for the value of this plant, as claimed in the petition.
Mr. Hunter testified that for more than a year he tried to make the well produce; that it' produced spasmodically, some days 20 barrels, some days 85 barrels, and then would fill with mud and sand, and that the well was not satisfactory, because it “was not a producing well.” Mr. -Hunter testified that he never called upon the plaintiff to do anything else to the well after he took charge of the same.
Mr. Currie testified that Mr. Hunter was manager, as his business called him to the field for another company; that the driller of the well told him that there was no easing for 140 feet next to the bottom, but that Subsequently he was told by one of plaintiff’s representatives that “a liner was put in there.”
Two representatives of the plaintiff testified that the well was drilled and completed in the usual manner; that when it was turned over to the defendant company it was flowing oil at the rate of about 70 barrels per day; that’ the well was connected with the tanks of defendant company, and more than 1,200 barrels of oil were piped into them; that, on the well ceasing to flow, they suggested that Mr. Hunter use a pump, and at' his request furnished a complete pumping plant; that no complaints were made as to the noncompletion of the well, and $6,500 was paid on account of the drilling contract, and that no objections were made to the statements of account rendered from time to time to Mr. Hunter as the manager of the oil company.
[3] It is evident that the oil company, by taking possession of the well and operating it for more than a year, without complaint' or objection communicated to the plaintiff, accepted the well as up to the requirements of the contract'. If thé defendant corporation was not satisfied, its representatives should have so notified the plaintiff, before taking possession of the work.
We note the absence from the transcript of the statement rendered to the defendant company, and checks and receipts showing amounts and dates of partial payments made t'o the plaintiff company. These documents, were offered in evidence by the defendants and appellants.
[4] The guaranty indorsed on the contract and signed by three directors of the defendant corporation, while obscure in its verbiage, is susceptible of but one construction, and that is that said three directors intended to guarantee that their company would comply with the terms of the contract.
Judgment affirmed.